# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>information associated with certain account(s) that is stored at premises owned, maintained, controlled, or operated by Uber Technologies Inc. ("Uber"), a service provider headquartered at 1515 3rd Street, San Francisco, California. | Case No. 23 MJ 123 |

**CLERK'S OFFICE**
**A TRUE COPY**
**May 30, 2023**
**s/ D. Olszewski**
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A.

located in the ___Eastern___ District of ___Wisconsin___, there is now concealed *(identify the person or describe the property to be seized)*:

Please see Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. §2119 | Carjacking |
| 18 U.S.C. §942(c) | Use of a Firearm During and in Relation to a Crime of Violence |

The application is based on these facts:
Please see Affidavit.

☑ Continued on the attached sheet.
☐ Delayed notice of __30__ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

**MATTHEW ERNST** Digitally signed by MATTHEW ERNST
Date: 2023.05.26 11:09:35 -05'00'

*Applicant's signature*

Matthew Ernst, Special Agent, ATF
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
___TELEPHONE___ *(specify reliable electronic means)*.

Date: 5/30/2023

*William E. Duffin*
*Judge's signature*

City and state: Milwaukee, WI     Honroable William E. Duffin, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A SEARCH WARRANT

I, Matthew Ernst, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information associated with certain account(s) that is stored at premises owned, maintained, controlled, or operated by Uber Technologies Inc. ("Uber"), a service provider headquartered at 1515 3rd Street, San Francisco, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Uber to disclose to the government copies of the information (including the content of communications) further described in Attachment B. Upon receipt of the information described in Attachment B, government-authorized persons will review that information to locate the items also described in Attachment B.

2. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (hereinafter "ATF"). As such, I am "an investigator or officer charged by the Attorney General with the duty of enforcing any of the criminal, seizure, or forfeiture provisions of the laws of the United States," within the meaning of Section 3051(a) of Title 18, United States Code; that is, an officer of the United States who is empowered by law to conduct investigations of, execute warrants and to make arrests for offenses against the United States and offenses enumerated in United States Code Title 18 and Title 21. I have been employed with the ATF since January 2015, and am currently assigned to the Milwaukee Field Office, under the Chicago Field Division. I completed Criminal Investigative Training and Special Agent Basic Training at the Federal Law Enforcement Training Center. I have received training in connection with, and conducted

investigations of violations of the National Firearms Act, Gun Control Act, and Title 18, United States Code, Sections 922(g), 924(c) and others. I have also received training and conducted investigations involving illicit drugs and the distribution of illicit drugs in violation of Title 21, United States Code, Sections 841, 843, 846 and others.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other law enforcement and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on my training, experience, and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 18, United States Code ("U.S.C."), Section 2119, Carjacking, and Title 18, U.S.C., Section 924(c), Use of a Firearm During and In Relation to a Crime of Violence, have been committed by Daeshontay CARTER ("CARTER"), and others, known and unknown, as explained below. There is also probable cause to search the information described in Attachment A for evidence of these crimes and contraband or fruits of these crimes, as described in Attachment B.

## JURISDICTION

5. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).] and is in . . . a district in which the provider . . . is located or in which the wire or electronic communications, records, or other information are stored." 18 U.S.C. § 2711(3)(A)(ii).

## PROBABLE CAUSE

6. In May of 2023, ATF initiated an investigation into CARTER, and other unknown individuals, regarding the armed carjacking of an of an Uber driver which occurred on March 25, 2023, between approximately 1030hrs to 1045hrs, on the 2500 block of N. 40th Street, Milwaukee, WI. The armed carjacking was carried out by three black males wearing masks and resulted in a red 2014 Ford Escape bearing Wisconsin license plate number 637CXY (VIN# 1FMCU9J97EUE48492), a black Apple iPhone, and keys, all belonging to the Uber driver, being stolen. The following is a synopsis of the carjacking as documented by Milwaukee Police Department (MPD).

7. On or about, March 25, 2023, at approximately 1053hrs, MPD officers responded to a reported Armed Robbery/Carjacking at 2524 N. 40th Street, Milwaukee, WI. Once on scene officers met the victim, S.M. (hereinafter referred to as "VICTIM"), who provided her initial statement to officers. At approximately 1203hrs, an MPD Detective (Det), assigned to the Criminal Investigation Bureau, responded to the scene, and was briefed regarding the circumstances surrounding the incident. The detective was informed the VICTIM was working as a driver for Uber at the time of the incident and that the VICTIM'S red 2014 Ford Escape bearing Wisconsin license plate number 637CXY (VIN# 1FMCU9J97EUE48492), Apple iPhone and keys were taken. The detective was informed the incident started at **2508 N. 40th Street, Milwaukee, WI** and ended at **2524 N. 40th Street, Milwaukee, WI**. The detective was further advised the VICTIM stated she may have been pistol whipped during the incident but did not have any observable injuries or request medical treatment.

8. After being briefed by the initial responding officers, the detective then conducted an interview of the VICTIM regarding the incident. The VICTIM stated she was driving for Uber

at the time of the incident and was specifically providing rides for customers. The VICTIM stated she had previously completed a trip and observed a ride request at the address of **2567 N. 40th Street, Milwaukee, WI**, which was approximately 0.7 miles away from her location. After accepting the ride request, the VICTIM stated she travelled to West Center Street and proceeded Southbound on North 40th Street. The VICTIM stated when she arrived at the location, she observed three (3) unknown black males, wearing black ski masks and all dark clothing, at the corner and were flagging her down. The VICTIM stated she proceeded to pick up the three (3) individuals, having two (2) subjects sit in the back seat and one (1) subject in the front passenger seat of the vehicle. After everyone was inside the vehicle, the VICTIM stated she began to drive South on N. 40th Street. When she got to the South end of the block, at approximately **2508 N. 40th Street**, the front seat passenger brandished a firearm, put it to her face, and told her to "get out of the car." The VICTIM then stopped, exited, and ran from the vehicle, leaving behind her cellular telephone at the behest of the suspect(s). The VICTIM stated she ran to the porch of **2520 N. 40th Street**, where two (2) of the suspects ran after her in order to get the key fob for the vehicle, which was located on her person. The VICTIM stated the two suspects began to go through her pockets until one of the suspects located and removed her key fob from her right jacket pocket. The VICTIM stated one of the suspects requested she give them United States Currency (USC), but she did not have any USC on her person. The VICTIM stated during the incident she may have been struck in the head with a firearm. The VICTIM stated she then ran to another porch, knocked

on the door, and begged for help and to have someone call 911. According to CAD information, the 911 call came from **2524 N. 40th Street**.

9. The VICTIM provided the following descriptions for the suspects:

   a. Front Seat Passenger: black male, medium build, approximately eighteen (18) to twenty (20) years old, and approximately 5'09" in height, wearing a black ski mask, that only showed the eyes and the bridge of the nose, and was wearing all dark or black clothing. The VICTIM described the firearm the suspect brandished as being a black pistol which looked similar to the detective's duty weapon.

   b. Rear Seat Passengers: were also wearing black ski masks and had on all dark clothing.

10. While on scene, MPD officers conducted a canvass for potential witnesses and/or video surveillance footage. Officers were also able to obtain surveillance footage from 2528 N. 40th Street as a result of the canvass which captured the armed carjacking. MPD officers verified the date and time of the camera were accurate and that the camera was facing south towards West Wright Street and overlooks North 40th Street. The following is a synopsis of what is captured on the footage as documented by MPD officers:

   a. At 10:43:47hrs, the VICTIM'S vehicle is seen entering the screen traveling South on North 40th Street.

   b. At 10:43:52hrs, the VICTIM'S vehicle makes an abrupt stop in front of 2508 N. 40th Street.

   c. At 10:44:02hrs, the VICTIM is seen exiting her vehicle and proceeds to run east towards the porch of 2520 N. 40th Street.

   d. At 10:44:18hrs, two (2) suspects are seen exiting the vehicle.

e. At 10:44:30hrs, all subjects are out of view of the camera.

f. At 10:45:02hrs, both suspects enter camera view and are seen running back to the VICTIM'S vehicle.

g. At 10:45:13hrs, the VICTIM'S vehicle is seen driving South on North 40th Street, crossing West Wright Street, and the video ends.

11. On or about, March 26, 2023, an MPD detective met with the VICTIM. During this meeting the VICTIM stated she was able to log into her Uber account and observed the ride associated to the carjacking incident had been cancelled shortly after the suspects took her vehicle.

12. On or about April 17, 2023, at approximately 2134hrs, MPD officers were patrolling in the area of North 52nd Street and West Clarke Street. While patrolling, officers observed a red Ford Escape SUV bearing an Illinois license plate traveling Westbound in the alley between West Center Street and West Clarke Street from North 51st Street. Officers began to approach the vehicle from the rear and as the officers were approaching the driver of the Ford Escape, later identified as CARTER, began to accelerate away from the officers marked MPD squad car. Officers continued to follow the Ford Escape in an attempt to run a registration check on the IL license plate affixed to the vehicle, later identified to be **IL license plate number DC49659** which was not registered to the Ford Escape. CARTER continued to accelerate away from officers at a high rate of speed. Officers then initiated their emergency lights and sirens in an attempt to conduct a traffic stop of the Ford Escape at North 55th Street and West Clarke Street. CARTER disregarded officers and a vehicle pursuit ensued. During the pursuit CARTER disobeyed posted stop signs, traffic signals, traveled the wrong way down one-way streets, drove on pedestrian sidewalks, and reached speeds in excess of 80 miles per hour on residential city streets.

13. The vehicle pursuit came to an end when CARTER attempted to make a U-turn at the intersection of North 38th Street and West Chambers Street to travel Southbound on North 38th Street. While performing this move, CARTER struck a tree while traveling on the pedestrian sidewalk in front of 2979 N. 38th Street. Following the accident, the Ford Escape came to a stop and officers observed CARTER exit the front driver's door and begin fleeing on foot. Officers gave verbal commands to stop running but CARTER continued to flee from law enforcement. CARTER was ultimately taken into custody without incident at the rear of 2953 N. 38th Street, Milwaukee, WI. It is also important to note, officers also observed an unknown black male approximately 5'10"-6'0", light build, wearing a red sweatshirt fleeing westbound from the accident site and was not taken into custody.

14. During an inventory search of the vehicle at the scene, officers located two (2) Wisconsin license plates bearing 637CXY resting in the rear trunk area. Through a Wisconsin Department of Transportation (DOT) check it was revealed the plates were previously registered to a red Ford Escape and was taken in an armed robbery carjacking incident. The officers also documented the VIN # on the vehicle as being 1FMCU9J97EUE48492 and were ultimately able to confirm that the Ford Escape was taken in the armed robbery carjacking which occurred on March 25, 2023.

15. On or about April 18, 2023, an MPD detective conducted a mirandized interview of CARTER. CARTER was read his Miranda Rights, stated he understood his rights, waived them, and provided a statement. CARTER stated he paid a dope fiend, named Munchie, $500.00 USC to use the red Ford Escape for a week. CARTER stated he took possession of the vehicle approximately nine (9) days ago from Munchie at the gas station located on North Avenue, between North 16th Street and North Teutonia Avenue. In regard to the pursuit from the day prior,

CARTER stated he was with a friend and they had just purchased some marijuana and were going to proceed to smoke. CARTER admitted to fleeing in the vehicle and on foot from law enforcement. CARTER also stated he had a white Apple iPhone 13 with a crack that he left in the vehicle when he fled on foot. CARTER stated the number for his cellular telephone was 414-551-0984.

16. Continuing on this date, MPD contacted ATF regarding CARTER possibly having information that would be of interest to the ATF. The information CARTER had was not related to his arrest the previous day. Your affiant along with another ATF Special Agent ("SA") went over to MPD to interview CARTER. Prior to the start of the interview, investigators read CARTER his Miranda Rights. CARTER stated he understood his Rights and was willing to speak with investigators. During the interview, CARTER consented to the search of his cellular telephone. Your affiant read CARTER an ATF Consent to Search Form, which listed CARTER'S cellular telephone as the only item that would be searched. After being read the ATF Consent to Search Form, CARTER provided written consent for investigators to search his cellular telephone.

17. After the completion of the above-detailed interview with CARTER, your affiant performed a cursory search of CARTER'S cellular telephone. Through this search your affiant observed web/search history on the device that raised suspicion of CARTER being involved in the armed carjacking incident on March 25, 2023.

18. On or about April 19, 2023, your affiant, along with an ATF SA and MPD Detective, continued a custodial interview of CARTER regarding questions which arose after the cursory review of CARTER'S cellular telephone. Prior to the start of the interview, investigators read CARTER his Miranda Rights and CARTER provided verbal acknowledgement he understood his Rights, waived them, and agreed to speak to investigators. Investigators confronted CARTER

with the web/search history observed on CARTER'S cellular telephone regarding the armed carjacking. Throughout this line of questioning CARTER was not forthcoming and maintained he liked to search weird things as a response to the web/search history. After continued questioning, CARTER eventually named individuals he knew as "Markese" and "Yashon" as suspects in the armed carjacking. CARTER stated "Markese" and "Yashon" pulled up on CARTER, in a red Ford Escape, sometime after the robbery occurred and asked CARTER to see if CARTER could sell the vehicle for them. CARTER stated he was unable to find someone to purchase the vehicle. CARTER stated he then went down to Chicago, IL. Upon returning to Milwaukee, WI in early April, CARTER maintained the story he previously told MPD detectuves that he rented the vehicle from an individual for $500.00 USC. CARTER stated he did not recognize the vehicle as the same one "Markese" and "Yashon" pulled up on CARTER in because the windows of the vehicle had been tinted and the vehicle had Illinois license plate(s) on the vehicle.

19. Between May 4, 2023 to May 15, 2023, your affiant reviewed cellular data extracted from CARTER'S cellular telephone. Messages, images/videos, emails, location data, search/web history, and connected devices were reviewed relative to the armed carjacking of an Uber driver which occurred on March 25, 2023.

20. While reviewing emails, your affiant observed CARTER received an email from Cash App on March 25, 2023, at approximately 1032hrs, where it stated CARTER spent $9.92 at Uber. Continuing on this date, at approximately 1046hrs, CARTER then received an email from Uber documenting CARTER canceling the earlier requested Uber ride. CARTER then received two (2) emails from Uber, first stating his account with Uber has been placed on hold and secondly stating his account with Uber has been permanently deactivated. The foregoing is consistent with the events which occurred during the armed carjacking incident on March 25, 2023.

21. While reviewing available GPS location data, your affiant observed between March 24, 2023, at 2116hrs, to March 25, 2023, at 1046hrs, CARTER'S cellular telephone showed it being at the coordinates of **(43.065300, -87.963204)**. Your affiant conducted a Google search of the above-listed coordinates and found they came back to **2544 N. 40th Street, Milwaukee, WI 53210.** This address is within the immediate area where the carjacking occurred. The pickup location for the Uber ride was at **2567 N. 40th Street, Milwaukee, WI**, which is located four (4) houses to the North on the West side of the street from 2546 N. 40th Street. Furthermore, the armed carjacking occurred between **2508 and 2524 N. 40th Street**, which four (4) to seven (7) houses to the South of 2546 N. 40th Street.

22. While reviewing messages, your affiant observed a Facebook Messenger conversation between CARTER and an individual where CARTER was seeking to get a "2015" Ford Escape spray painted approximately seven (7) hours after the armed carjacking incident took place. Your affiant also observed another Facebook Messenger conversation between CARTER and another individual where CARTER inquires if the individual would be willing to trade something for a 2014 Ford Escape approximately two (2) days after the armed carjacking incident. The individual showed interest in purchasing the vehicle from CARTER, but after the individual asks if the vehicle is a "joint", referring to a stolen vehicle, and CARTER confirms it is the individual decides against purchasing the vehicle from CARTER.

23. On or about May 16, 2023, your affiant reviewed video surveillance footage, recorded on March 25, 2023, recovered from the Mobil Oasis Gas Station, located at 13845 W. Tollway Oasis Service Road, Libertyville, IL 60048, in relation to the armed carjacking of an Uber driver driving a red 2014 Ford Escape which occurred on March 25, 2023. Through the review of the footage, your affiant observed the red Ford Escape stolen in the carjacking arrive at the gas

station at approximately 1140hrs. Your affiant then observed CARTER exiting the driver's seat of the vehicle, along with two (2) black males, enter the store, shop, and proceed to depart from the gas station in the stolen vehicle.

24. Your affiant conducted a Google Map search to see how long it would take to travel from where the carjacking occurred to the Mobil Oasis Gas Station. Your affiant selected 2508 N. 40th Street, Milwaukee, WI, which is approximately where the carjacking occurred, as the starting point and 13845 W. Tollway Oasis Service Road, Libertyville, IL as the destination point. Your affiant observed the distance between the two (2) locations was approximately 60.1 miles and would take approximately fifty-nine (59) minutes to travel from one location to the other. The time it took from when the suspect vehicle was observed leaving the carjacking location to when it arrived at the Mobil Oasis Gas Station was approximately fifty-five (55) minutes, which is consistent with the amount of time it was observed to travel between the locations on Google Maps.

25. In sum, your affiant believes CARTER utilized his account through Uber to order a rideshare and subsequently participated in the armed carjacking, along with two (2) other suspects. Data observed on CARTER'S cellular telephone, video surveillance footage, and CARTER being arrested in the stolen vehicle are all consistent with CARTER'S overt involvement in the armed carjacking.

## BACKGROUND CONCERNING UBER

26. Uber is a technology company with a proprietary technology application (the "Uber App") that provides on-demand lead generation and related services. The Uber App connects independent providers of transportation services with requests from riders requesting

transportation services. Drivers provide transportation services to riders through a range of offerings based on vehicle type and/or the number of riders.

27. Uber stores and maintains information related to riders and driver-partners. When riders sign up and use the service, certain information is obtained and maintained in the ordinary course of using the service. This may include a phone number, email address, name, account start and end date, registration IP address, status, rating, payment method, customer service communications, and photo. When driver-partners sign up to use Uber, it may have additional information including, license plate numbers, vehicle information, address, a driver-partner's employer (if any), insurance information, agreements, certain communications between driver-partners and riders, and some GPS location data.

28. Providers such as Uber typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account, and other log files that reflect usage of the account. In addition, providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the account.

29. In some cases, account users will communicate directly with a provider about issues relating to their account, such as technical problems, billing inquiries, or complaints from other users. Providers typically retain records about such communications, including records of contacts

between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications.

30. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Uber to disclose to the Government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## **CONCLUSION**

31. Based on the forgoing, I request that the Court issue the proposed search warrant.

32. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving the warrant on Uber. Because the warrant will be served on Uber, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

# ATTACHMENT A

## Property to Be Searched

This warrant applies to information associated with the following accounts for an Uber ride requested by the passenger/client on March 25, 2023 at approximately 1032hrs Central time with a pickup location in the vicinity of **2567 N. 40th Street, Milwaukee, WI,** that is stored at the premises owned, maintained, or controlled by Uber, a company headquartered in San Francisco, California:

- **Passenger/Client**: Daeshontay Marvell CARTER (B/M, DOB: 01/09/2002), utilizing email addresses tay.carter1@icloud.com and/or daeshontaycarter89@gmail.com, utilizing telephone number 414-551-0984.

- **Uber Driver:** Susan Malloy (W/F, DOB: 07/09/1953), utilizing email address suemalloy3@gmail.com and telephone number 414-243-7185. Driving a red 2014 Ford Escape bearing VIN: 1FMCU9J97EUE48492 and Wisconsin License Plate Number 637CXY.

## ATTACHMENT B

## Particular Things to be Seized

I. **Information to be Disclosed by Uber**

To the extent that the information described in Attachment A is within the possession, custody, or control of Uber, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Uber, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Uber is required to disclose the following information to the government for each account listed in Attachment A:

a. All records or other information regarding the identification of the accounts listed in Attachment A, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, login IP addresses associated with session times and dates, account status, e-mail addresses provided during registration, methods of connecting, log files, device information i.e. model and IMEI numbers, any available profile pictures, means and source of payment (including any credit or bank account number), and drivers vehicle information i.e. license plate data, make and model of vehicle, insurance, registration data and VIN;

b. All records pertaining to communication between Uber and any person regarding the accounts listed in Attachment A, including contacts with support services and records of actions taken.

c. All records associated with rides requested, cancelled, and/or completed by the accounts listed in Attachment A on March 25, 2023, including pickup and destination locations

and times, amount charged, map of route taken, and billing transaction history i.e. amounts, dates, times, and payment instrument used.

d. All records, including GPS location data, for both the passenger and driver, and any communications between the passenger and driver, associated with the March 25, 2023 ride. This includes any available GPS location data for the driver immediately after the armed carjacking occurred.

**II. Information to be Seized by the Government**

All information described above in Section I that constitutes evidence of, or was property used in committing crimes involving, violations of 18 U.S.C. §§ 2, 924(c) & 2119 for carjackings involving an Uber driver committed in Milwaukee, WI on March 25, 2023 as it relates to CARTER and the other suspects involved.